A06A2466. HINELY v. ALLIANCE METALS, INC. OF ATLANTA et al.
(645 SE2d 584)

PHIPPS, Judge.

Robert F. Hinely, Jr. sued his former employer for breach of an employment contract and related torts. The State Court of Fulton County granted summary judgment to the former employer on the

ground that Hinely's claims had already been litigated in a prior federal court action. We hold that the federal action did not preclude Hinely's claims in this case and that summary judgment was improperly granted on some of them. Accordingly, we affirm in part and reverse in part.

When reviewing a grant of summary judgment,

> this Court conducts a de novo review of the law and the evidence. . . . When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion.[1]

The record shows that Hinely founded Hinely Aluminum, Inc., a business that distributed painted aluminum sheets, in 1988. Six years later, he sold the business to its main supplier, Alliance Metals, Inc., which was wholly owned by Bradley Evans. A separate company, Alliance Metals, Inc. of Atlanta ("Alliance Atlanta"), was formed to purchase Hinely Aluminum's assets. As part of the deal, Hinely entered into a five-year employment contract with Alliance Atlanta to serve as its president.

The contract provided that Hinely would earn a base salary, plus incentive compensation based on a percentage of Alliance Atlanta's net sales. If Hinely became dissatisfied with the incentive compensation calculation, he could request relevant data from Alliance Atlanta, and any disputes over the calculation would be referred to a "Big Six" accounting firm. The contract also contained a noncompetition and nonsolicitation clause limiting Hinely's ability to engage in a competing venture within two years of the termination of the employment contract.

The parties' relationship soon soured. In January 1995, Hinely was told that he would not receive any incentive compensation for the previous year. Believing that Alliance Atlanta must have manipulated the relevant data, Hinely requested information so that he could determine whether his incentive compensation had been correctly calculated. According to Hinely, however, Alliance Atlanta never provided the information.

In February 1995, Hinely began to suspect that Evans was engaging in an illegal price fixing scheme with a competitor. He reported his suspicions to the Department of Justice, which launched

---

[1] *Gen. Elec. Capital Computer Svcs. v. Gwinnett County Bd. of Tax Assessors*, 240 Ga. App. 629, 630 (1) (523 SE2d 651) (1999) (citation and punctuation omitted).

an investigation that eventually resulted in Evans pleading guilty to criminal antitrust violations.

In October 1995, Hinely wrote Evans a letter complaining that Evans and the Alliance companies had constructively discharged him, effective immediately, by breaching the employment contract in various ways. Shortly thereafter, Hinely formed a new aluminum business, Hinely Industries, Inc., that competed with Alliance Atlanta.

In December 1995, Hinely brought this action in the State Court of Fulton County against Alliance Atlanta, Alliance Metals, and Evans (collectively, the Alliance entities). The complaint alleged that the Alliance entities had breached the employment contract by (1) failing to give Hinely adequate information to verify Alliance Atlanta's calculation of his incentive compensation, (2) failing to pay the proper amount of incentive compensation, (3) drastically cutting back his responsibilities as president, (4) rendering impossible his performance of his employment obligations without participating in the price-fixing scheme, and (5) depriving him of the benefit of his bargain by establishing an illegal enterprise. The complaint also alleged that the defendants had fraudulently induced Hinely to enter the employment contract, tortiously interfered with the contract, and breached the implied covenant of good faith and fair dealing.

In February 1996, Alliance Atlanta sued Hinely and Hinely Industries in the United States District Court for the Northern District of Georgia, alleging trademark infringement and breach of the noncompete clause in the employment contract.[2] The state court case was stayed pending resolution of the federal case. The federal district court awarded judgment to Alliance Atlanta, ruling that by opening his new business, Hinely had breached the noncompete clause and infringed Alliance Atlanta's right to the trade name "Hinely Aluminum."[3] The United States Court of Appeals for the Eleventh Circuit affirmed.[4]

When the federal litigation ended, the state court granted summary judgment to the Alliance entities on all claims in this case. It held that the prior final judgment in the federal action collaterally estopped Hinely from re-litigating his claims in state court. It also held that Hinely had waived his claims regarding incentive compensation by not following the grievance procedure set forth in the

---

[2] *Alliance Metals v. Hinely Indus.*, No. 1:96-CV-268, 1998 WL 34300554 (N.D. Ga. Feb. 19, 1998).

[3] See *Alliance Metals v. Hinely Indus.*, 222 F3d 895, 899 (11th Cir. 2000) (discussing district court's ruling).

[4] See id.

employment contract and that he had not provided any evidence to support his other claims.

1. Hinely argues that collateral estoppel does not apply because the federal courts did not actually decide whether Alliance Atlanta had breached the employment contract. We agree.

Collateral estoppel, or issue preclusion, precludes the re-litigation of an issue that was previously litigated and decided on the merits in another action between the same parties or their privies.[5] "[C]ollateral estoppel does not require identity of the claim — so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim."[6] Collateral estoppel "only precludes those issues that were actually litigated and decided in the previous action, or that necessarily had to be decided in order for the previous judgment to have been rendered."[7]

In the federal case, Hinely admitted that he had contravened the noncompete clause in the employment contract, but argued that he was relieved of any obligations under that contract because the Alliance entities had breached it first, in the same ways Hinely alleged in the state court action.[8] Hinely relied on a provision of the contract stating that the noncompete clause would be null and void if Alliance Atlanta materially breached the contract. With respect to the trademark infringement claim, Hinely argued that Alliance Atlanta could not enforce the rights it had acquired in the "Hinely Aluminum" trade name through the asset purchase agreement because it had materially breached the employment contract.

The federal district court rejected Hinely's arguments. In an order granting a preliminary injunction to Alliance Atlanta, the court ruled that the price-fixing scheme, while "deplorable," had not prevented the parties' performance of their mutual obligations and therefore had not constituted a material breach of the employment contract. Nor had the diminishment of Hinely's responsibilities as president breached the contract, according to the district court, because Hinely's salary and status continued to be the same and because the contract provided that his responsibilities were subject to Evans's direction. Finally, the court ruled that Alliance Atlanta had responded, "whether completely or not," to Hinely's requests for information about incentive compensation, yet Hinely had elected

---

[5] *Shields v. BellSouth Advertising &c. Corp.*, 273 Ga. 774, 777 (II) (545 SE2d 898) (2001).

[6] Id. (citation and punctuation omitted).

[7] *Wickliffe v. Wickliffe Co.*, 227 Ga. App. 432, 433 (1) (489 SE2d 153) (1997) (citation and punctuation omitted).

[8] See *Alliance Metals v. Hinely Indus.*, No. 1:96-CV-268, 1998 WL 34300554, at *3 (N.D. Ga. Feb. 19, 1998).

not to invoke his contractual remedy of binding arbitration by a major accounting firm. Thus, the district court ruled that Alliance Atlanta had not materially breached the employment contract.[9] That order, however, was preliminary. Because collateral estoppel applies only to final rulings,[10] the findings in the preliminary injunction order cannot preclude Hinely's claims here.

In a subsequent order awarding summary judgment to Alliance Atlanta, the district court again addressed Hinely's argument that Alliance Atlanta had breached the employment agreement. The court ruled:

> Notwithstanding the fact that the court has already determined that [Alliance Atlanta's] actions do not constitute breaches of the employment agreement . . . Hinely himself has failed to comply with ¶ 10 (D) of the agreement, which provides, in relevant part, that the noncompetition provision "shall be null and void . . . if (Alliance Atlanta) materially breaches the terms of this agreement and fails to cure any such breach within thirty (30) days after notice from (Hinely) specifying the breach and requiring it to be cured." It is undisputed that Hinely did not provide the requisite notice until October 2, 1995, the same day that he resigned. Hinely thus failed to take the action necessary to lift the restrictions of the noncompetition provisions and is therefore bound by its terms.[11]

But in an order denying Hinely's motion for reconsideration of the summary judgment order, the district court clarified that it had not actually determined that Alliance Atlanta had not breached the employment contract. Rather, the court stated, its grant of summary judgment rested on Hinely's undisputed failure to comply with the notice provision of the noncompete clause.[12] Thus, the summary judgment order did not actually decide whether Alliance Atlanta had breached the employment contract.

Before the Eleventh Circuit, Hinely reiterated his argument that the noncompete clause in the employment contract was void because Alliance Atlanta had materially breached the contract first. The court ruled that Hinely had failed to give Alliance Atlanta notice and an

---

[9] See *Alliance Metals v. Hinely Indus.*, No. 1:96-CV-268 (N.D. Ga. May 28, 1996), at pp. 15-17 (order granting preliminary injunction).

[10] *Greene v. Transport Ins. Co.*, 169 Ga. App. 504, 506 (3) (313 SE2d 761) (1984).

[11] *Alliance Metals v. Hinely Indus.*, No. 1:96-CV-268, 1998 WL 34300554, at *3 (N.D. Ga. Feb. 19, 1998).

[12] Id. at *7.

opportunity to cure its alleged breaches, as required by the contract — but the court did not actually decide whether Alliance Atlanta had committed any breach.[13] Moreover, the court rejected Hinely's argument that he was excused from providing the requisite notice because doing so would have been futile.[14]

The Alliance entities also argue that, in deciding their trademark claims, the federal courts implicitly ruled that they had not breached the employment contract. We disagree. The district court's summary judgment order did not address Hinely's argument that Alliance Atlanta had no right to the trade name because of its alleged breach of the employment contract.[15] The Eleventh Circuit acknowledged Hinely's argument, but concluded that Alliance Atlanta acquired the right to the trade name during the sale of the business and was thereafter free to use the name as it wished.[16] Thus, the Eleventh Circuit implicitly ruled that any subsequent breach of the employment contract by Alliance Atlanta did not affect its ownership of the trade name. The court did not address whether Alliance Atlanta had, in fact, committed such a breach.

Because the federal courts did not actually decide the issue of whether Alliance Atlanta breached the employment contract, Hinely is not collaterally estopped from litigating it in state court. The trial court erred by ruling otherwise.

2. The Alliance entities contend that, if collateral estoppel does not apply here, then the related doctrine of res judicata — or claim preclusion — does. We disagree.

"The doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies, in identical causes of action."[17] Thus, res judicata may preclude not only those claims that were actually made in the first suit between the parties, but also all claims that could have been litigated then.[18]

Res judicata does not apply here, however, because the state court action, not the federal action, was filed first. Although Georgia courts have not addressed this issue, "the traditional rule is that purely defensive use of a legal theory does not preclude a later action

---

[13] *Alliance Metals v. Hinely Indus.*, 222 F3d at 904.

[14] Id. at 905-906.

[15] To the contrary, the district court stated: "It is undisputed that pursuant to the asset purchase agreement, Alliance Atlanta owns the trademark rights to the name 'Hinely Aluminum, Inc.' and its logo." *Alliance Metals v. Hinely Indus.*, No. 1:96-CV-268, 1998 WL 34300554, at *3 (N.D. Ga. Feb. 19, 1998).

[16] See *Alliance Metals*, 222 F3d at 906-907.

[17] *Lay Bros. v. Tahamtan*, 236 Ga. App. 435, 436 (511 SE2d 262) (1999) (punctuation and footnote omitted).

[18] *Wilson v. Auto-Owners Ins. Co.*, 791 F2d 886, 887 (11th Cir. 1986).

for affirmative recovery on the same theory," unless compulsory counterclaim rules applied in the first action.[19] Because this case was already pending when the federal action was filed, Hinely's breach of contract claims were not compulsory counterclaims required to be brought in the federal action.[20] Hinely's defensive assertion of breach of contract in the federal action could not halt his prosecution of already-filed breach of contract claims in state court.

3. Turning to the merits of Hinely's claims, we find that the trial court properly granted summary judgment to the Alliance entities on other of Hinely's claims.

(a) The trial court ruled that Hinely's claims regarding incentive compensation failed as a matter of law because he did not seek arbitration by a "Big Six" accounting firm as required by the contract. Hinely argues that Alliance Atlanta's antecedent breach of the contract by failing to give him the information he requested excused him from any obligation to seek arbitration. We agree with the trial court.

The contract stated that Hinely had 30 days to review the incentive compensation calculation and that Alliance Atlanta was required to provide him with "access to and copies of all information and materials he requires to complete such review." Within five business days after the end of the 30-day review period, Hinely could voice objections to Alliance Atlanta. The contract further provided:

> In the event of any dispute about the calculation of Incentive Compensation or Additional Incentive Compensation, the amount due [Hinely], *or any other matter described herein*, such matter shall be promptly referred to a "Big Six" accounting firm that is mutually acceptable to [Alliance Atlanta] and [Hinely]. . . .[21]

Hinely's contention that Alliance Atlanta failed to give him adequate information fell within the broad scope of "any other matter described herein," as did his claim that he was underpaid. Under the contract, these matters should have been referred to an accounting firm. It is undisputed that Hinely was reminded of his right to seek such a referral, but did not do so. Under these circumstances, Hinely has no

---

[19] *Eason v. Bd. of County Commrs. &c.*, 961 P2d 537, 539 (Colo. App. 1997) (citing 18 Moore's Federal Practice § 131.22 [1] [b] (3d ed. 1997)); see also *Schneider v. Colegio de Abogados de Puerto Rico*, 546 FSupp. 1251, 1272 (D. Puerto Rico 1982).

[20] See Fed. R. Civ. P. 13 (a).

[21] (Emphasis supplied.)

valid claim for breach of contract based on Alliance Atlanta's alleged failures to provide him with adequate information and incentive compensation.[22]

(b) The trial court ruled that the reduction in Hinely's job responsibilities did not breach the employment contract because he retained the same job title and salary and because, under the contract, Evans was empowered to direct his employment. The trial court also ruled that Alliance Atlanta did not breach the employment contract by engaging in an illegal price fixing scheme. Citing OCGA § 13-8-1, the court stated that a contract is void only when it cannot be performed without violating the law. Because the employment contract did not provide for price fixing, the court reasoned, it was not void.

These claims, although styled as breach of contract claims, essentially allege that Alliance Atlanta constructively discharged Hinely by making his working conditions intolerable. Because the federal district court in its order awarding summary judgment to Alliance Atlanta expressly ruled that Hinely failed to present sufficient evidence to support a claim of constructive discharge, and because this ruling was not disturbed by the Eleventh Circuit,[23] these issues were actually litigated in the federal action and therefore may not be relitigated now.[24]

*Judgment affirmed in part and reversed in part. Smith, P. J., and Ruffin, J., concur.*

DECIDED APRIL 13, 2007 —
RECONSIDERATIONS DENIED MAY 8, 2007 — 

*Chamberlain, Hrdlicka, White, Williams & Martin, Richard N. Hubert, David P. Thatcher*, for appellant.

*Ashe, Rafuse & Hill, William B. Hill, Jr., Littler Mendelson, John T. Stembridge, Jenna Sunderland-Barresi*, for appellees.

---

[22] See generally *JOJA Partners, LLC v. Abrams Properties*, 262 Ga. App. 209, 210-211 (1) (585 SE2d 168) (2003) (courts uphold valid arbitration provisions in contracts). Hinely does not challenge the validity of the arbitration provision here; he merely argues that it does not apply.

[23] See *Alliance Metals*, 222 F3d at 900-903.

[24] See Division 1, supra.